IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SOUTHERN PIONEER PROPERTY & ) | |
| CASUALTY INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 2:09-cv-903-MEF-SRW |
| ) | |
| JEFFREY BENNETT, *et al.*, ) | (WO - DO NOT PUBLISH) |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Southern Pioneer Property & Casualty Insurance Company ("Southern Pioneer") brought this case against Jeffery Bennett ("Bennett"), Joseph Russell ("Russell"), and Franklin Mount and Novella Mount (collectively, the "Mounts"), doing business as Little Harlem Club ("Little Harlem"). (Doc. #1). Southern Pioneer seeks a declaratory judgment that it does not owe a duty to defend and/or indemnify its insureds, the Mounts, in a state court action brought by Bennett (the "state court action"). On March 4, 2010, the Clerk issued an entry of default against Russell and the Mounts for failing to answer or otherwise defend this action. (Doc. #18). The Court dismissed Bennett's counterclaim and denied Bennett's motion to stay in an order issued on April 7, 2010. (Doc. #20). Now pending before the Court is Southern Pioneer's motion for entry of a default judgment against Russell and the Mounts pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. #19). As part of this motion, Southern Pioneer asks the Court to issue a declaratory

judgment. For the reasons set forth in this Memorandum Opinion and Order, this motion is due to be GRANTED.

Bennett filed the state court action on February 10, 2009 in the Circuit Court of Covington County, Alabama.[1] He alleges that on November 1, 2008, both he and Russell patronized Little Harlem, a business owned and/or operated by the Mounts. Bennett further alleges that Russell, though visibly intoxicated, was served alcohol at Little Harlem, which led to a physical attack committed by Russell resulting in injuries to Bennett. Bennett brings three claims against the defendants in the state court action. In Count I, Bennett seeks damages from the Mounts pursuant to Alabama's Dram Shop Act, claiming they sold alcohol to Russell contrary to the provisions of the law, proximately resulting in harm from Russell's alleged attack. Ala. Code § 6-5-71 (1975). In Count II, Bennett claims that the Mounts failed to provide proper security at Little Harlem, proximately resulting in harm from Russell's alleged attack. In Count III, Bennett claims that Russell assaulted and battered him.

From August 12, 2008 to August 12, 2009, Southern Pioneer insured Little Harlem under a liquor liability insurance policy, bearing policy number LL-10192-08-01 (the "liquor policy"). Relevant language from the policy is given as follows:

    1.     Insuring Agreement.

          a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of injury to which this insurance applies if liability for such injury is imposed on the insured by reason of selling, serving or furnishing of any

---

[1] The suit is styled *Jeffery Bennett v. Joseph Russell, et al.*, Civil Action No. CV-09-25.

       alcoholic beverage. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for injury to which this insurance does not apply. . . .

. . .

2.      Exclusions.

      This insurance does not apply to:

      a.      Assault and Battery.

           Injury arising from the following:

           (1)    Assault of any kind, with or without a weapon;

           (2)    Battery of any kind, with or without a weapon;

           (3)    Harmful or offensive contact between or among two or more persons;

           (4)    Apprehension of harmful or offensive contact between or among two or more persons;

           . . .

           regardless of degree of culpability or intent and without regard to: . . . (b) any alleged negligence whatsoever, including but not limited to the alleged failure of the insured, or his officers, employees, agents, or servants, in the hiring, supervision, retention or control of any person whether or not an officer, agent or servant of the insured; or (c) the alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct.

           . . .

      . . .

>       e.      Your Product.
>
>       Injury arising out of your product.
>
>       This exclusion does not apply to injury for which the insured or the insured's indemnities may be held liable by reason of:
>
>       (1)     Causing or contributing to the intoxication of any person;
>
>       . . .
>
>       (3)     Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

Under section V of the liquor policy, "your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by" the named insured.

In general, under Alabama law, the insured bears the burden of establishing coverage by showing that his or her claim falls within the policy. *See Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967). By contrast, the insurer bears the burden of proving the applicability of any policy exclusion. *See U.S. Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985). A court should give the language in an exclusionary provision the same meaning "that a person of ordinary intelligence would reasonably give it." *W. World Ins. Co. v. City of Tuscumbia*, 612 So. 2d 1159, 1161 (Ala. 1992). A court must construe an ambiguous policy liberally in favor of the insured and interpret exceptions to coverage as narrowly as possible in order to provide maximum coverage to the insured. *Altiere v. Blue Cross & Blue Shield*, 551 So. 2d 290, 292 (Ala. 1989). However, a court must

enforce an unambiguous policy as written and should not defeat express provisions of the contract, including exclusions from coverage, by making a new contract. *W. World Ins. Co.*, 612 So. 2d at 1161.

The liquor policy unambiguously excludes coverage for injuries arising from assaults and batteries. The policy expressly excludes assaults and batteries "of any kind, with or without a weapon." It also excludes conduct, and apprehension of that conduct, of a type resembling the elements of assault and battery. *See, e.g.*, *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190, 1193 (Ala. 1998) defining battery); *Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995) (defining assault). Enforcing these unambiguous policy provisions as written, the Court finds that the liquor policy does not cover Bennett's Count III claim for assault and battery.[2]

Furthermore, the liquor policy expressly excludes coverage for injuries resulting from assaults and batteries "without regard to . . . any negligence whatsoever." Bennett's Count II claim for failure to provide proper security, proximately resulting in harm from the alleged assault and battery, appears to be a negligence claim, which is unambiguously excluded by the liquor policy. However, even if not a negligence claim, the liquor policy excludes coverage for assaults and batteries "without regard to . . . the alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct." Therefore, the liquor policy unambiguously excludes coverage for damages

---

[2] Additionally, Bennett only asserts this claim against Russell, who is not a named insured on the liquor policy.

resulting from the insured's alleged failure to protect Bennett, via security or otherwise, from assaults and batteries. Enforcing these unambiguous policy provisions as written, the Court finds that the liquor policy does not cover Bennett's Count II claim that he was injured due to the Mounts alleged failure to provide proper security at Little Harlem.

The liquor policy also excludes coverage for injuries arising from Little Harlem's product. As a bar, Little Harlem's products include alcoholic beverages. However, the liquor policy also provides an exclusion from this exclusion. The contract language states that the "your product" exclusion does not apply to the insured's liability for "[c]ausing or contributing to the intoxication of any person" or violating "[a]ny statute . . . relating to the sale . . . of alcoholic beverages," clearly implicating the Dram Shop Act. This provision might appear to show that the liquor policy covers Bennett's Count I claim of a Dram Shop Act violation. However, the injuries asserted in Count I are assault and battery, which are expressly excluded in the liquor policy.

The Alabama Supreme Court has determined the proper resolution in a situation such as this where a party brings a Dram Shop claim—which is covered under an insurance policy—for an injury which is excluded from coverage. In *Gregory v. Western World Insurance Company, Inc.*, Gregory brought claims alleging that he had been assaulted and battered at Big Daddy's Lounge, including as one count a Dram Shop action against Big Daddy's Lounge. 481 So. 2d 878, 878–79 (Ala. 1985). Western World Insurance Company, Inc. ("Western World") filed a declaratory judgment action, seeking a determination that its

policy did not provide coverage to its insured, Big Daddy's Lounge, on Gregory's claims. *Id.* at 879. The policy at issue, using language substantially identical to the language in the liquor policy, included both an assault and battery exclusion and a "your product" exclusion which is stated to not apply to Dram Shop actions. *Id.* at 880–81. The Alabama Supreme Court, affirming summary judgment in favor of Western World, found that the unambiguous exclusion of coverage for assaults and batteries also excluded coverage for Dram Shop actions stemming from an injury from an assault and battery. *Id.* at 881. Based on this established Alabama law, and enforcing the unambiguous policy provisions as written, the Court finds that the liquor policy does not cover Bennett's Count I Dram Shop claim.

Because the liquor policy does not cover any of the counts in the state court action, Southern Pioneer has no duty to defends its insured in the state court action.

While the existence of a duty to defend may be established by the allegations made in the state court action complaint, the insurer's duty to indemnify cannot be determined at a preliminary stage in the proceedings. The duty to indemnify does not become ripe for adjudication until the insured is in fact held liable in the state court action. *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995). This is because the plaintiff in the state court action may still change the theory of liability and assert a claim that is covered by the policy at issue. *Ladner & Co. v. S. Guar. Ins. Co.*, 347 So. 2d 100, 104 (Ala. 1977).

As this lawsuit has been brought in federal court under the Declaratory Judgment Act, the Court must decide the issue of ripeness in view of the Constitution's restriction on the

exercise of federal judicial power to "cases" and "controversies." U.S. Const. art. III, § 2. The Declaratory Judgment Act, "in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision." *Auto-Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1565 (M.D. Ala. 1996) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 1566 (citing *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Additionally, the Declaratory Judgment Act states that a court "*may* declare the rights and other legal relations of any interested party seeking this declaration." 28 U.S.C. § 2201 (emphasis added). The Supreme Court has characterized the Declaratory Judgment Act as conferring "a discretion on the courts rather than an absolute right upon the litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). "There is . . . nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court to hear a declaratory judgment action . . . . In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to consideration of particularity and wise judicial administration." *Id.* at 288 (quoting E. Borchard, Declaratory Judgments 313 (2d ed. 1941)). District courts are vested with such broad discretion "because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are

peculiarly within their grasp." *Id.* at 289.

Here, if the relevant defendants were to prevail in the underlying state court action, the issue of whether Southern Pioneer must indemnify them would be moot, thus the court would never have to reach the issue. Therefore, the Court holds that the issue of indemnification is not sufficiently ripe to present a "case" or "controversy." Even if it were ripe, the Court would still, in its discretion, decline to provide declaratory relief.

For the foregoing reasons, it is hereby ORDERED that:

1) Southern Pioneer's motion for entry of a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure (Doc. #19) is GRANTED;

2) The provisions raised in Southern Pioneer's complaint for declaratory judgment (Doc. #1) are unambiguous as a matter of law, and there is no coverage for the claims in the state court action;

3) Southern Pioneer has no duty to defend in the state court action;

4) The Court declines to provide declaratory relief with regards to any duty to indemnify; and

5) The Court will enter a separate final judgment consistent with this Memorandum Opinion and Order.

DONE this the 27th day of July, 2010.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE